## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

VITAL PHARMACEUTICALS, INC., d/b/a
VPX SPORTS,

        Plaintiff,

v.                                           Case No.

PEPSICO, Inc.,

        Defendant.

## COMPLAINT

Plaintiff, Vital Pharmaceuticals, Inc., d/b/a VPX Sports ("VPX" or "Plaintiff"), states as follows for its Complaint for Injunctive Relief in Aid of Arbitration against Defendant PepsiCo, Inc. ("PepsiCo"):

## NATURE OF THIS ACTION

1. VPX is one of the leading manufacturers of fitness-focused nutritional supplements and energy drinks in the world. Its BANG® energy drink is among the most popular and rapidly expanding brands in the energy drink segment.

2. Following the introduction of the BANG® brand, VPX built a very high functioning distribution network. In late 2019 and early 2020, due to the meteoric rise in sales and popularity of the BANG® brand, and in recognition of the opportunity to further advance and expand the BANG® brand to the top of the highly competitive energy drink marketplace, VPX wanted to ensure that its distribution network was not just good, but best in class. VPX engaged in discussions with PepsiCo, which represented that it had capabilities to advance the BANG® brand beyond VPX's current high functioning network and encouraged VPX to switch to PepsiCo's distribution network.

-1-

-2-

3. In March 2020, in reliance on PepsiCo's assertions of its capabilities and projections for advancement of the BANG® brand, VPX and PepsiCo entered into a distribution agreement whereby, among other things, PepsiCo agreed to distribute certain of VPX's BANG® products in certain distribution channels throughout the United States (the "Distribution Agreement").[1] That Distribution Agreement included ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4. In the contracting process, PepsiCo pushed VPX to transition its network at an accelerated pace and even inserted aggressive transition requirements into the Agreement. VPX not only met those aggressive transition requirements, but again relying on PepsiCo's representations on its capabilities to advance the BANG® brand actually vastly exceeded those requirements, at great expense to VPX.

5. Despite VPX's efforts and good faith approach to the relationship, PepsiCo repeatedly failed to perform, to address VPX management's performance concerns, or to advance the BANG® brand. Instead, PepsiCo was more concerned with pushing VPX to transition still more of its existing network, beyond what was required of VPX in the Distribution Agreement.

6. After months of under-performance and unaddressed or inadequately addressed concerns, it became apparent to VPX that PepsiCo either did not have capabilities that it represented, or that it was less interested in advancing the BANG® brand, and more interested in

---

[1] The Distribution Agreement contains a confidentiality provision. Accordingly, VPX is filing this redacted version of the Complaint, which cites to certain provisions of the Distribution Agreement, and will be seeking leave to file an unredacted version of the Complaint under seal, along with a copy of the Distribution Agreement.

using the popularity of the BANG® brand to tie in and push other failed PepsiCo energy products, such as Rockstar®.

7. Accordingly, on October 23, 2020, VPX was forced to protect its BANG® brand by terminating its Distribution Agreement with PepsiCo. In that process, VPX continued its good faith dealings by offering "buyout". Following that termination, however, PepsiCo has punitively scaled back its already inadequate efforts related to the BANG® brand. Still worse, as if the damage that PepsiCo had done to the BANG® brand was not enough, and with no regard for VPX's benefit of the bargain or need to protect its brand, PepsiCo has taken the position that VPX is somehow trapped into continuing to distribute the BANG® brand only through PepsiCo for not only the short term, but <u>exclusively</u> for the next three years.

8. To that end, PepsiCo has gone so far as to threaten VPX's current and prior distribution partners into not doing business with or even exploring a relationship with VPX. These actions, coupled with PepsiCo's lack of performance prior to termination, and scaled back efforts following termination, conclusively establish PepsiCo's reckless disregard for the BANG® brand and its true intentions for entering into the Distribution Agreement with VPX in the first place (e.g. to advance its own failed brands, rather than VPX's)

9. PepsiCo's actions have caused incalculable and irreparable harm, and will continue to cause such harm, to VPX, the VPX brand, and the VPX distribution network worth billions of dollars, if PepsiCo's actions are not enjoined.

10. Despite PepsiCo's own failings under the Distribution Agreement, PepsiCo recently filed a Demand for Arbitration with the AAA against VPX.

## THE PARTIES

11. VPX is a Florida corporation with its principal office located at 1600 N. Park Drive, Weston, FL 33326, and is therefore a citizen of Florida.

12. PepsiCo is a North Carolina corporation with its principal place of business located at 700 Anderson Hill Road, Purchase, New York 10577.

## JURISDICTION AND VENUE

13. This is an action for injunctive relief pursuant to the parties' Distribution Agreement. 

14. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The parties to this action are diverse: VPX is a citizen of Florida and PepsiCo is a citizen of New York and North Carolina. The amount in controversy, including the objects of the litigation, exceeds $75,000.00 exclusive of interest and costs. Specifically, VPX has sustained damage due to PepsiCo's improper interference with VPX's business relationships that are immeasurable, but well in excess of $75,000.

15. Venue is proper in this Court because, pursuant to 28 U.S.C. § 1391, a substantial part of the events or omissions giving rise to VPX's claim occurred in this District.

## FACTUAL BACKGROUND

### I. The Parties' Distribution Agreement

16. VPX sells its products internationally and nationwide. Prior to March 2020, VPX relied in part on independent wholesale distributors to sell and distribute its products to retail resellers.

17. In March 2020, VPX and PepsiCo entered into the Distribution Agreement █████ ████████████████████████████ ████████████████████████████ ███████████

18. The Distribution Agreement obligated PepsiCo ██████████ ████████████████████████████ ██████████████████████

19. Likewise, the Parties understood and contemplated ████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ █████████████████████

20. To be equitable, the Distribution Agreement further provided █████ ████████████████████████████ ██████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

21. The Parties also negotiated ███████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████

22. Still further, the Parties expressly contemplated █████████████

███████████████████████████████████████████████████████████
███████████████████████████

23. The Distribution Agreement never contemplated █████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
████████████

### II. PepsiCo fails to use commercially reasonable efforts to distribute the Licensed Products.

24. Almost immediately after the distributor transition process began, VPX started receiving troubling evidence of PepsiCo's failures to properly service its territories and VPX customers.

25. Far from using commercially reasonable efforts, PepsiCo's distribution strategy has resulted in *lost* market share for the Licensed Products. In Florida, for example, VPX soon learned that, instead of stocking BANG®-branded coolers with the Licensed Products, PepsiCo had supplanted them with other brands in its portfolio including its core soft drink brands.

26. Other Florida retailers reported that, despite 26 core flavors of the Licensed Products, their shelves were frequently barren or otherwise lacking in any meaningful product selection. Prior to PepsiCo's appointment as distributor, these shelves were fully stocked.

27. Further evidence indicates that PepsiCo had *reduced* shelf space for the Licensed Products, preferring instead to promote its newly-acquired Rockstar® energy drink portfolio.

28. In an ultra-competitive market like the energy drink space, this loss of direct access to consumers is untenable and cause irreparable harm to VPX.

29. Consistent with the above, PepsiCo failed to adequately supply marquee VPX accounts. For example, VPX learned from Quick Trip, one of its most significant convenience store customers, that unit sales of the Licensed Products were significantly decreasing since PepsiCo had assumed distribution rights.

30. Quick Trip attributed the downward sales trend to frequent out of stock situations at many of its locations throughout the southwestern United States, a result that was squarely due to PepsiCo's failure to service the market.

31. PepsiCo not only failed to distribute Licensed Product within its territories, but has orchestrated a campaign of intimidation to prevent retailers from rectifying their chronic out-of-stock situations directly with VPX.

32. In response to Quick Trip's attempts to secure adequate inventory of the Licensed Product directly from VPX, PepsiCo sought to strong arm Quick Trip by leveraging Quick Trip's ability to distribute other PepsiCo product, such as Gatorade.

### III. Termination of the Distribution Agreement and PepsiCo's subsequent interference.

33. In light of PepsiCo's persistent inability (or unwillingness) to adequately invest resources to distribute Licensed Products, VPX elected to terminate the Distribution Agreement without cause on October 23, 2020.

34. Rather than acknowledge the clear effect of termination, PepsiCo escalated its efforts to obstruct VPX's ability to transition distribution rights to successor entities.

35. PepsiCo has threatened legal action against VPX's future channel partners despite being terminated. In a letter to VPX's successor distributor in Texas, dated November 5, 2020, PepsiCo improperly proclaimed that it "retains the exclusive right at this time to distribute Bang." PepsiCo further demanded that the distributor "immediately cease and desist interfering with PepsiCo's rights and business relationships."

36. Terminated PepsiCo's efforts to sabotage VPX's distribution efforts have also coalesced around a concentrated effort to spread misinformation to retailers. In a press release dated November 17, 2020, PepsiCo represented that it retained "_exclusive_ rights to distribute Bang products in all of the United States…" (Emphasis in original). And further that "PepsiCo's exclusive rights continue…[n]either VPX nor any other distributor has rights to distribute Bang to your locations."

37. These and other threats have caused confusion in the marketplace and have had a chilling effect on VPX's ability to execute its distribution succession plan. For example, 7-Eleven, one of the nation's largest convenience store chains, adapted PepsiCo's November 17, 2020 letter into its own press release and disseminated the very same misrepresentations to its retail network.

## IV. Arbitration and Interim Injunctive Relief

38. The Distribution Agreement contains a provision ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

39. While VPX cannot calculate its harm at this time, as Pepsi continues its tortious actions and until this court enters an order preliminarily enjoining it, VPX continues to and has incurred substantial economic harm that very well could be in the billions of dollars and is otherwise being damaged.

40. VPX only seeks to have this Court adjudicate its request for injunctive relief to restore and preserve the status quo pending resolution of the parties' disputes in the pending arbitration.

### COUNT I - BREACH OF DISTRIBUTION AGREEMENT

41. VPX re-alleges and incorporates herein by reference the allegations contained in the preceding Paragraphs.

42. The Distribution Agreement is valid and enforceable contract between VPX and PepsiCo.

43. VPX has fully performed all of its obligations under the Distribution Agreement.

44. ███████████████████████████████████████████████████████
███████████████████████████████████████████████████████
███████████████

45. ███████████████████████████████████████████████████
███████████████████████████████████████████

46. PepsiCo breached the Distribution Agreement by failing to use commercial reasonable efforts to promote, sell and distribute the Licensed Products.

47. PepsiCo further breached the Distribution Agreement by issuing false and misleading statements related to the status of PepsiCo's relationship with VPX and PepsiCo's entitlement to continue serving as the exclusive distributor of the Licensed Products.

48. VPX has and will sustain damages and irreparable harm as a result of PepsiCo's past and ongoing breaches of the Distributor Agreement.

49. VPX has no adequate remedy at law for the foregoing present and threatened future irreparable harm.

WHEREFORE, VPX respectfully demands preliminary and permanent injunctive relief, and such other further relief as this Court deems just and proper.

### COUNT II - TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

50. VPX re-alleges and incorporates herein by reference the allegations contained in the preceding Paragraphs.

51. PepsiCo has knowledge of VPX's business relationships with its independent wholesale distributors.

52. Pepsi has intentionally and without justification, wrongly interfered with VPX's business relationships with its independent wholesale distributors.

53. VPX has suffered and will continue to suffer irreparable harm and damages as a consequence of this interference by PepsiCo. Such damages include lost profits and diminished customer goodwill.

54. VPX has no adequate remedy at law for the foregoing present and threatened future irreparable harm.

WHEREFORE, VPX respectfully demands preliminary and permanent injunctive relief, and such other further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Vital Pharmaceuticals, Inc. d/b/a VPX Sports prays that the Court grant the following relief:

A. a preliminary injunction enjoining PepsiCo from in any way communicating with VPX customers or VPX independent wholesale distributors that PepsiCo is the exclusive distributor of the Licensed Products;

B. a preliminary injunction enjoining PepsiCo from engaging in any communications with VPX customers or VPX independent wholesale distributors which prohibit, discourage or deter VPX customers or VPX independent wholesale distributors from purchasing the Licensed Products from VPX or its independent distributors;

B. an Order awarding VPX its attorneys' fees and costs associated with prosecuting this action; and

C. such other and further relief as the Court deems just and proper, including general damages and/or punitive damages.

Dated: November 25, 2020

/s/*Zachary S. Foster*
Zachary S. Foster
Florida Bar No. 111980
**QUARLES & BRADY LLP**
101 E. Kennedy Blvd.,
Suite 3400
Tampa, Florida 33602
Telephone: (813) 387-0300
Fax: (813) 387-1800
Zachary.Foster@quarles.com

and

Francis Massabki
Florida Bar No. 687901
Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326
Telephone: (954) 641-0570
Fax: (954) 389-6254
frank.massabki@vpxsports.com

*Attorneys for Plaintiff*
*Vital Pharmaceuticals, Inc.*