UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CIV-62415-RAR

**VITAL PHARMACEUTICALS,**
**d/b/a VPX Sports**,

      Plaintiff,

v.

**PEPSICO, INC.**,

      Defendant.
_____/

## ORDER GRANTING IN PART MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendant PepsiCo, Inc.'s Motion to Dismiss [ECF Nos. 49 and 51-1] ("Motion"), which seeks a dismissal with prejudice of Plaintiff's Complaint or, alternatively, a stay of this action pending the parties' ongoing arbitration. Having reviewed the Motion, Plaintiff's Response [ECF No. 56], Defendant's Reply [ECF No. 64-1], the record, applicable law, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss is **GRANTED IN PART** as set forth herein.

## BACKGROUND

This case concerns a dispute between PepsiCo, Inc. ("Pepsi") and Vital Pharmaceuticals ("VPX") over a distribution agreement whereby Pepsi agreed to become the exclusive distributor for certain VPX products, including Bang-branded energy beverages ("Licensed Products"). *See* Compl. [ECF No. 32] ¶ 17; Ex. A, Distribution Agreement ("Agreement") § 1.1. The Agreement, which the parties entered into on March 6, 2020, required Pepsi to, among other things, use "commercially reasonable efforts" to distribute the Licensed Products. *See* Agreement § 2.3(a)(i). Soon after entering into the Agreement, VPX became dissatisfied with Pepsi's distribution

performance. *See* Compl. ¶ 24. VPX alleges that Pepsi failed to ensure the Licensed Products were fully stocked at retail stores and instead promoted its own energy-drink portfolio over VPX's products. *See id.* ¶¶ 26–27. According to VPX, Pepsi's actions resulted in a market share loss for VPX. *See id.* ¶ 25. VPX therefore elected to terminate the Agreement without cause on October 23, 2020. *See* Compl. ¶ 33.

The Agreement provides that a termination without cause "shall be effective in three (3) years after the date the written notice is received by the other Party." Agreement § 3.2(a). However, the parties dispute whether Pepsi retains the exclusive right to distribute the Licensed Products during that three-year period. VPX maintains that the Agreement authorizes it to immediately acquire distribution rights upon providing notice of termination. *See* Compl. ¶ 20–23. VPX thus contends that Pepsi breached the Agreement and tortiously interfered with VPX's business relationships by continuing to hold itself out as the exclusive distributor of the Licensed Products and discouraging other distributors from purchasing them from VPX. *See* Compl. ¶¶ 47, 52.

On November 25, 2020, VPX filed the Complaint in this action seeking to enjoin Pepsi from: (i) "communicating with VPX customers or VPX independent wholesale distributors that PepsiCo is the exclusive distributor of the Licensed Products"; and (ii) "engaging in any communications with VPX customers or VPX independent wholesale distributors which prohibit, discourage or deter VPX customers or VPX independent wholesale distributors from purchasing the Licensed Products from VPX or its independent distributors." Compl. at 11; *see also* VPX's Motion for Preliminary Injunction [ECF No. 6] at 16. The Complaint states that VPX is seeking this injunctive relief in aid of an arbitration proceeding that Pepsi initiated with the American Arbitration Association (AAA) on November 23, 2020. *See* Compl. at 1 and ¶ 10; Mot. at 4.

While VPX sought injunctive relief from this Court, Pepsi requested that the AAA appoint an Emergency Arbitrator to award emergency injunctive relief prior to the constitution of the arbitration panel ("Emergency Arbitration"). *See* Mot. at 4. On December 7, 2020, the Emergency Arbitrator issued an Interim Order [ECF No. 19-2] ("Emergency Arbitration Order") finding that based on the unambiguous terms of the Agreement, Pepsi is "likely entitled to the relief that is seeks in this Arbitration, namely, a declaration that [Pepsi] remains [VPX's] exclusive distributor pursuant to the [Agreement] through October 24, 2023." Emergency Arbitration Order at 9. The Emergency Arbitrator also concluded that Pepsi "made a sufficient showing that it would suffer immediate and irreparable loss or damage in the absence of emergency relief." *Id.* at 17. Thus, to maintain the status quo pending arbitration of the parties' dispute, the Emergency Arbitrator ordered VPX to abide by the terms of the Agreement and cease efforts to sell to customers for whom Pepsi has exclusive distribution rights. *Id.* at 21.

Pepsi subsequently filed a motion with this Court to confirm the Emergency Arbitration Order. *See* Defendant's Expedited Motion to Confirm Arbitration Award [ECF No. 14]. On December 21, 2020, after reviewing the Emergency Arbitration Order under the standards set forth in sections 9–11 of the Federal Arbitration Act, the Court confirmed the Emergency Arbitration Order. *See Vital Pharm. v. PepsiCo, Inc.*, No. 20-CIV-62415-RAR, 2020 WL 7625226, at *4–5 (S.D. Fla. Dec. 21, 2020). The Court then held a status conference with the parties on December 22, 2020, and inquired as to whether this action should be dismissed or stayed given that the relief VPX seeks in this case is essentially the opposite of the relief already granted by the Emergency Arbitrator—and confirmed by this Court. *See* Transcript of Telephonic Status Conference [ECF No. 52]. Pepsi indicated that this action was rendered moot by the Emergency Arbitration Order, but VPX maintained that it should be permitted to proceed with its effort to seek injunctive relief from this Court. *See id.* at 8:10-17; 11:19-24; 12:15-19.

The following week, Pepsi filed the instant Motion seeking a dismissal or stay of this action. In the Motion, Pepsi argues that this action should be dismissed because: (i) VPX is collaterally estopped from challenging the arbitrator's construction of the agreement or the appropriate status quo to be enforced pending arbitration; (ii) under the Federal Arbitration Act, VPX is prohibited from asserting a collateral attack on the Arbitration Order; and (iii) the arbitrator's correct interpretation of the Agreement belies VPX's breach of contract and tortious interference claims.

## LEGAL STANDARD

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all factual allegations contained in the complaint, and the plaintiff should receive the benefit of all favorable inferences that can be drawn from the facts alleged. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *Iqbal*, 556 U.S. at 678.

"The affirmative defense of collateral estoppel may be raised in a Rule 12(b)(6) motion to dismiss, 'where the existence of the defense can be judged on the face of the complaint.'" *Eisenberg v. City of Miami Beach*, 1 F. Supp. 3d 1327, 1338 (S.D. Fla. 2014) (quoting *Haddad v. Dudek*, 784 F. Supp. 2d 1308, 1324 (M.D. Fla. 2011)); *see also Madura v. Bank of Am., N.A.*, 767 F. App'x 868, 872 (11th Cir. 2019). In considering such a challenge, the Court may also take judicial notice of state and federal court records of prior proceedings, as well as its own records. *See Harrell v. Bank of Am., N.A.*, 813 F. App'x 397, 400 (11th Cir. 2020); *Solis v. Glob. Acceptance Credit Co., L.P.*, 601 F. App'x 767, 771 (11th Cir. 2015).

## ANALYSIS

Florida law governs the preclusive effect of the judicially confirmed Emergency Arbitration Order.  *See CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F. 3d 1333, 1340 (11th Cir. 2017).  Under Florida law, collateral estoppel applies where: "1) the identical issues were presented in a prior proceeding; 2) there was a full and fair opportunity to litigate the issues in the prior proceeding; 3) the issues in the prior litigation were a critical and necessary part of the prior determination; 4) the parties in the two proceedings were identical; and 5) the issues were actually litigated in the prior proceeding."  *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1078–79 (11th Cir. 2013) (quoting *Porter v. Saddlebrook Resorts, Inc.*, 679 So. 2d 1212, 1214–15 (Fla. 2d DCA 1996)).  "[A] determination made during an arbitration proceeding can provide an appropriate foundation for the application of collateral estoppel."  *Bates v. Betty & Ross Co.*, 46 So. 3d 615, 617 (Fla. 3d DCA 2010) (quoting *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235 (Fla. 2006)).

Here, the Court agrees with Pepsi that the Emergency Arbitration Order, which was confirmed by this Court, should be afforded preclusive effect in this proceeding.  The issue resolved in the Emergency Arbitration proceeding is the same issue that the Court is being asked to resolve here—that is, which party is likely to succeed on its construction of the Agreement and, if injunctive relief is warranted, what is the status quo that should be preserved pending arbitration.  In its Complaint, VPX asserts that it "*only* seeks to have this Court adjudicate its request for injunctive relief to restore and preserve the status quo pending resolution of the parties' disputes in the pending arbitration."  Compl. ¶ 40 (emphasis added).  The injunctive relief VPX seeks pending arbitration is for the Court to enjoin Pepsi from holding itself out as the exclusive distributor of the Licensed Products and discouraging other distributors or customers from purchasing the Licensed Products directly from VPX.  *See* Compl. at 11.

But the Emergency Arbitrator already considered the parties' arguments concerning whether the Agreement provides for Pepsi to remain the exclusive distributor during the three-year post-notice period and concluded that Pepsi was likely to succeed on its interpretation of the Agreement. *See* Emergency Arbitration Order at 9 ("[T]he Emergency [Arbitrator] concludes that Claimant is likely entitled to the relief that it seeks in Arbitration, namely, a declaration that Claimant remains Respondent's exclusive distributor pursuant to the Agreement through October 24, 2023."). Having made that finding, the Emergency Arbitrator determined that the appropriate status quo pending arbitration is Pepsi remaining the exclusive distributor of the Licensed Products and VPX ceasing its efforts to sell to customers for whom Pepsi has exclusive distribution rights. *Id.* at 23. Thus, the only way for the Court to grant VPX the relief it seeks here is to reverse the Emergency Arbitration Order (which the Court already confirmed) by reaching the exact *opposite* conclusion—that VPX, not Pepsi, is likely to succeed on its interpretation of the Agreement.

Indeed, the points VPX presents in its Complaint and Motion for a Preliminary Injunction to persuade the Court to adopt its construction of the Agreement are the precise arguments the Emergency Arbitrator rejected. *See* Compl. ¶¶ 20-22 (contending that §§ 3.2(a) and (c) of the Agreement contemplated that VPX would have the right to begin transitioning distribution away from Pepsi immediately after providing notice, not after the effective date of termination); Mot. for Preliminary Injunction at 4-5 (same); Emergency Arbitration Order at 8 (rejecting VPX's construction of §§ 3.2(a) and (c) of the Agreement). Although VPX's Complaint also contains allegations regarding the adequacy of Pepsi's distribution of the Licensed Products, the Complaint does not ask the Court to enjoin Pepsi from failing to use "commercially reasonable" distribution methods for the pendency of the arbitration. If it did, then the relevant issues in this proceeding would—at least to some extent—be different from those considered by the Emergency Arbitrator.

Instead, the injunction VPX seeks is essentially a status quo where Pepsi does *not* have exclusive distribution rights for the Licensed Products pending arbitration, which the judicially confirmed Emergency Arbitration Order already found likely runs afoul of the Agreement's unambiguous provisions for a termination without cause.

In addition to the Emergency Arbitration and this proceeding presenting the same key issues, the other collateral estoppel factors are also satisfied. First, the parties had a full and fair opportunity to litigate these issues before the Emergency Arbitrator. The Emergency Arbitrator considered briefs, declarations, and exhibits from both parties, and conducted a hearing on December 3, 2020. *See* Emergency Arbitration Order at 4-5. The Emergency Arbitration Order indicates that in addition to its opposition brief, VPX submitted five declarations with exhibits. *Id.* Further, the Emergency Arbitrator wrote a detailed 23-page order explaining the materials he considered and his reasons for reaching the conclusion that Pepsi was entitled to the injunctive relief it sought in the arbitration. *See generally id.*

Second, the question of which party is likely to succeed on its interpretation of Pepsi's distribution rights during the post-notice period was clearly "a critical and necessary part" of the Emergency Arbitrator's determination. Together with his assessment of whether Pepsi would suffer irreparable harm in the absence of an injunction, the Emergency Arbitrator's construction of the Agreement formed the basis of the injunction he granted. Third, the Emergency Arbitration and this proceeding involve the same parties: Pepsi and VPX. Finally, as discussed above, the likelihood of success of the parties' competing contractual interpretations and the appropriate status quo pending arbitration were "actually litigated" before the Emergency Arbitrator.

In its Response, VPX advances two arguments that warrant further discussion. First, VPX contends that the Court should not apply collateral estoppel based on the Emergency Arbitration Order because preliminary injunction findings are generally not afforded preclusive effect under

Florida law.  *See* Resp. at 7–8.  VPX is correct that under Florida law, preliminary injunction findings are generally not considered conclusive determinations *on the merits* unless an injunction hearing is "specially set" for the purpose of deciding the merits of a case and the parties have a full opportunity to present their case.  *See David Vincent, Inc. v. Broward Cty., Fla.*, 200 F.3d 1325, 1331 (11th Cir. 2000) (finding that the denial of a preliminary injunction did not preclude the subsequent grant of permanent equitable relief); *Eisenberg v. City of Miami Beach*, 54 F. Supp. 3d 1312, 1322 (S.D. Fla. 2014) (holding that state court's denial of Plaintiff's previous request for temporary injunction did not collaterally estop Plaintiff's request for permanent equitable relief for constitutional violations); *Wells Fargo Bank, N.A. v. Barber*, 85 F. Supp. 3d 1308, 1318 (M.D. Fla. 2015) (finding that Court's prior denial of Plaintiffs' emergency motion for temporary restraining order and preliminary injunction was not "a final resolution of Plaintiffs' fraudulent transfer claims.").

However—unlike *Vincent* and the other cases cited by VPX regarding the preclusive effect of preliminary injunction findings (*see* Resp. at 7-8)—this case does not involve an attempt to use a prior preliminary injunction ruling to determine a final substantive point on the merits.  The issue here is whether the preliminary injunctive relief granted to Pepsi by the Emergency Arbitrator should have preclusive effect in a subsequent preliminary injunction proceeding in a different forum where VPX is seeking the exact opposite relief.  The Court is not aware of a Florida case addressing this specific question, but several "federal cases—useful because the standard for collateral estoppel appears universal—support the proposition that a preliminary injunction ruling has preclusive effect with regard to subsequent motions for preliminary injunction."  *Hayes v. Ridge*, 946 F. Supp. 354, 364 (E.D. Pa. 1996), aff'd, 216 F.3d 1076 (3d Cir. 2000).

These courts have found, with sound reasoning, that a preliminary injunction ruling is conclusive on the limited issue presented by the preliminary injunction—*i.e.*, whether a party can

show likelihood of success on the merits, irreparable harm, and the other necessary factors. *See id.*; *Rosedale Manor Assocs., LLP v. Borough of Madison, New Jersey*, No. CV 04-341 (JCL), 2005 WL 8175463, at *3 (D.N.J. Aug. 16, 2005); *Bridal Expo, Inc. v. van Florestein*, No. CIV.A. 4:08-CV-03777, 2009 WL 255862, at *5 (S.D. Tex. Feb. 3, 2009). Florida's standard for collateral estoppel does not meaningfully differ from that of Pennsylvania, New Jersey, and Texas,[1] and the Court finds these cases persuasive on the issue of collateral estoppel in this action.

VPX also argues that the issues in this case are distinct from the Emergency Arbitration because the Emergency Arbitrator only considered likelihood of success on the merits and irreparable harm and did not consider the balance of the harms and public interest—two additional factors this Court would be required to consider when adjudicating VPX's Motion for Preliminary Injunction. For purposes of collateral estoppel, it is clear that issues are not the same when the legal standard governing evaluation of the facts is different. *See Hotchkiss v. Blue Cross & Blue Shield of Fla., Inc.*, 277 So. 3d 760, 761 (Fla. 1st DCA 2019). Here, however, to prevail in this federal injunction action, VPX must show a likelihood of success on the merits of its contractual interpretation—which is an element that was resolved in Pepsi's favor in the judicially confirmed Emergency Arbitration Order. Failure to prove this element is fatal to VPX's request for a federal injunction. *See Bridal Expo*, 2009 WL 255862, at *5, n.6 (applying collateral estoppel where Texas preliminary injunction relied on two of the same elements necessary to grant a federal preliminary injunction because "failure to prove any of them would be fatal to Plaintiffs' request for a federal injunction"); *Hayes*, 946 F. Supp. at 365 (applying collateral estoppel even though the Pennsylvania and federal "preliminary injunction standards are not identical in form or

---

[1] *See Hayes*, 946 F. Supp. at 363 (describing Pennsylvania collateral estoppel standard); *Bridal Expo*, 2009 WL 255862, at *3 (describing Texas collateral estoppel standard); *Rosedale Manor Assocs.*, 2005 WL 8175463, at *3 (describing New Jersey collateral estoppel standard).

phrasing" because "in substance they are very similar, such that the 'issue' decided by the Commonwealth Court—whether a preliminary injunction is the proper relief under Pennsylvania state law—is essentially the same as the issue presented to this court.").[2]

The Court is also unpersuaded by VPX's argument that it is seeking relief here based on fact issues that the Emergency Arbitrator did not consider. *See* Resp. at 10. VPX contends that the Emergency Arbitrator did not consider the fact that Pepsi was "deliberately breaching the Distribution Agreement by refusing to undertake commercially reasonable efforts to promote, sell, and distribute the Licensed Products," and that Pepsi was leaving shelves barren and stocking its own products instead of the Licensed Products. *Id.* A review of the brief VPX submitted to the Emergency Arbitrator reveals that these facts were presented in that proceeding. *See* VPX Arbitration Opposition Brief at 6–7. And the Emergency Arbitrator noted that "[o]ther arguments and contentions of the Parties regarding this Application that are not expressly addressed herein have been considered by the Emergency Arbitrator." *See* Emergency Arbitrator Order at 17. The fact that the Emergency Arbitrator did not expressly address every underlying factual allegation the parties presented does not alter the preclusive effect of the Emergency Arbitration Order.

Application of collateral estoppel in this case is consistent with the doctrine's purpose of "prevent[ing] repetitious litigation of what is essentially the same dispute." *M.C.G. v. Hillsborough Cty. Sch. Bd.*, 927 So. 2d 224, 227 (Fla. 2d DCA 2006) (quoting Restatement (Second) of Judgments § 27, cmt. c). As the Court indicated in its Order confirming the arbitration award, although the parties' Agreement allows for the adjudication of an emergency injunction in arbitration, it also unambiguously permits the parties to seek injunctive relief in federal court. *See*

---

[2] Further, the parties did brief the balance of harms and public interest factors in the Emergency Arbitration. *See* Respondent's Opposition to Claimant's Application for Emergency and Injunctive Relief [ECF No. 40-2] ("VPX Arbitration Opposition Brief") at 29–30.

*Vital Pharm.*, 2020 WL 7625226, at *5. Thus, if VPX were seeking injunctive relief that had not already been litigated in the arbitration proceeding, the Court would certainly entertain VPX's request. For example, as mentioned above, if VPX were seeking injunctive relief relating to Pepsi's use of commercially reasonable methods to distribute the Licensed Products during the post-notice period, this issue would not be precluded by the Emergency Arbitration Order. But that is not the injunction that VPX seeks in this proceeding. Instead, VPX is asking this Court to make the precise preliminary finding regarding Pepsi's distribution rights pending arbitration that was rejected in the arbitration award.

Additionally, the notion that the Court should revisit or scrutinize the findings made in the Emergency Arbitration Order—which is at base what the Court would be doing if it allowed VPX to proceed with this request for an injunction—is in clear tension with the FAA's limited scope of judicial review. "Judicial review of arbitration decisions is 'among the narrowest known to the law.'" *Gherardi v. Citigroup Glob. Markets Inc.*, 975 F.3d 1232, 1237 (11th Cir. 2020) (quoting *Bamberger Rosenheim, Ltd. v. OA Dev., Inc.*, 862 F.3d 1284, 1286 (11th Cir. 2017)). Otherwise, "the efficiency gains of arbitration would be destroyed and arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *Id.* at 1238 (quoting *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 588 (2008)). Sections 10 and 11 of the FAA provide the exclusive grounds for vacatur of an arbitration award. *See Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1322 (11th Cir. 2010). Thus, when "a suit is in substance no more than a collateral attack on the [arbitration] award itself, it is governed by the provisions of the [FAA]." *Foster v. Turley*, 808 F.2d 38, 42 (10th Cir. 1986).

Although VPX filed this action before the Emergency Arbitration Order was issued, the reality at this juncture is that: (i) both parties participated in the Emergency Arbitration and fully presented their arguments in support of their preferred status quo pending arbitration; (ii) the

Emergency Arbitrator made a ruling on the likelihood of success of the parties' contractual interpretations and the appropriate status quo pending arbitration; and (iii) this Court reviewed the Emergency Arbitration Order under the standards set forth in the FAA and—finding no basis for vacatur—confirmed the arbitration award.

Given these circumstances, by continuing to press for injunctive relief that is incompatible with the Emergency Arbitration Order, VPX is in effect executing a collateral attack on that order. *See, e.g., Wachovia Sec., LLC v. Wiegand*, No. 07CV243 IEG (BLM), 2007 WL 9776732, at *4 (S.D. Cal. Apr. 16, 2007) ("A party collaterally attacks an arbitration award by seeking to reverse the outcome in the subsequent proceeding or alleging that the party was harmed by a wrongful act's impact on the award."). The Court is not permitted to "revisit … the legal merits" or "factual determinations upon which [the arbitration award] relies" without running afoul of the FAA. *Wiand v. Schneiderman*, 778 F.3d 917, 926 (11th Cir. 2015).

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss [ECF Nos. 49 and 51-1] is **GRANTED IN PART**.

2. Plaintiff's Complaint is **DISMISSED** *without prejudice*.

3. The Clerk of Court is instructed to **CLOSE** this case.

4. With the exception of Pepsi's Motion for Attorneys' Fees [ECF No. 66], any pending motions are **DENIED AS MOOT**. The Court retains jurisdiction to decide Pepsi's Motion for Attorneys' Fees [ECF No. 66].

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 16th day of March, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**