UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62415-RUIZ/STRAUSS

**VITAL PHARMACEUTICALS, INC,**

    Plaintiff,
v.

**PEPSICO, INC.,**

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon PepsiCo, Inc.'s Motion for Attorneys' Fees ("Motion") [DE 66]. The Motion has been referred to me to take all action as required by law [DE 73]. I have reviewed the Motion, the response [DE 71] and reply thereto [DE 76], and the record in this case. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion [DE 66] be **GRANTED IN PART and DENIED IN PART**, with Defendant, PepsiCo, Inc. ("Pepsi"), being awarded **$111,684.81** in attorneys' fees.

## BACKGROUND

Plaintiff, Vital Pharmaceuticals, Inc ("VPX"), and Pepsi are parties to a Distribution Agreement ("Agreement") [DE 19-3, Ex. A] pursuant to which Pepsi agreed to become the exclusive distributor for certain VPX products. Order Granting in Part Motion to Dismiss ("Dismissal Order") [DE 78] at 1. On October 23, 2020, VPX terminated the Agreement without cause. Order Granting Defendant PepsiCo, Inc.'s Expedited Motion to Confirm Arbitration Award ("Confirmation Order") [DE 73] at 1. Consequently, on November 23, 2020, Pepsi filed a Demand for Arbitration with the American Arbitration Association, seeking the appointment of an

emergency arbitrator to award emergency relief prior to the constitution of the arbitration panel. *Id.* at 2. Two days later, VPX filed this action seeking injunctive relief to prevent Pepsi's alleged ongoing breaches of the Agreement and tortious interference with VPX's business relationships. *Id.*

On December 7, 2020, the emergency arbitrator issued an Interim Order ("Award"), effectively granting emergency injunctive relief to Pepsi in order to maintain the status quo pending arbitration of the parties' dispute. *See id.* at 2-3, 5. The following day, Pepsi filed a motion in this case to seek confirmation of the Award. [DE 15]. On December 21, 2020, this Court entered the Confirmation Order [DE 43], granting Pepsi's motion and confirming the Award. As this Court found, "the Emergency Arbitrator's Order granting equitable relief to Pepsi is sufficiently final to be confirmed under the FAA. Despite its interim nature, the Emergency Arbitrator's award is a preliminary injunction, and confirmation of the injunction is necessary to make final relief meaningful." Confirmation Order at 5 (internal quotation marks and citations omitted). Subsequently, on March 16, 2021, this Court entered the Dismissal Order [DE 78], dismissing VPX's Complaint without prejudice, but retaining jurisdiction to adjudicate the instant Motion.

## **ANALYSIS**

Pursuant to the Motion, Pepsi seeks an award of attorneys' fees in the amount of $159,441.90 for fees it asserts were incurred in connection with seeking confirmation of the Award. The parties dispute a few issues related to the Motion. First, VPX disputes Pepsi's entitlement to any attorneys' fees. Second, VPX contends that even if Pepsi is entitled to attorneys' fees, the Court should defer determination of any fee award until litigation concludes (the arbitration proceeding remains pending). Third, Pepsi contends that it is entitled to *all* of its

attorneys' fees, without any consideration of whether such fees are *reasonable*. Finally, if the Court were to determine that Pepsi is entitled to reasonable attorneys' fees, the parties dispute what amount is reasonable. For the reasons discussed herein, the first three arguments all fail. Pepsi is entitled to an award of *reasonable* attorneys' fees incurred in connection with seeking confirmation of the Award as it defended the Award in seeking confirmation. Moreover, there is no basis to delay that fee award. Therefore, after discussing the first three arguments, I will address the reasonableness of the attorneys' fees Pepsi seeks to recover.

I.   **ENTITLEMENT**

Pepsi is entitled to an award of attorneys' fees under Section 9.11(b) of the Agreement, which provides, in pertinent part, the following:

> [I]f the [arbitration] award is confirmed by a court of competent jurisdiction, a Party challenging the award or resisting enforcement of a judgment entered upon the award will pay, to the extent permitted by law, all costs, attorneys' fees and expenses incurred by the other Party in defending the award or seeking enforcement of the judgment.

Succinctly, it is unmistakably clear that the requirements of the subject fee provision are satisfied. This Court, a court of competent jurisdiction, entered the Confirmation Order, confirming the Award. The record makes clear that VPX challenged the Award. *See* [DE 35]. *See also* Confirmation Order. Therefore, as the party challenging the Award, VPX is obligated to pay the attorneys' fees Pepsi incurred in defending the Award (subject to a reasonableness requirement as discussed below).

VPX, however, argues that "strictly construing Section 9.11(b), as the Court must under New York law,[1] reveals that Pepsi[] is entitled to attorneys' fees in only two discrete situations:

---

[1] Both parties agree that New York law governs the interpretation of the Agreement, as set forth in section 9.11(a) of the Agreement. Nevertheless, my finding regarding entitlement would be the

(1) where VPX 'challenges' a confirmed award; or (2) where VPX resists enforcement of a judgment arising from [a] confirmed award." Response at 3 (partially redacted in Response). While VPX correctly observes that the subject fee provision provides for a fee award in two situations, and while it appears to accurately describe the second situation (a situation not at issue here), VPX inaccurately describes the first situation, which is at issue here. VPX's description of the first situation is inaccurate because VPX inappropriately inserts the word "confirmed" – claiming that the first entitlement situation is "where VPX challenges a *confirmed* award," as opposed to "where VPX challenges an award." If the Court were to adopt VPX's description of the subject fee provision, it would be improperly changing the unambiguous plain meaning of the fee provision by inserting a word that is absent from the provision. Because the Court is not permitted to rewrite the parties' Agreement, VPX's argument fails.

## II.    VPX'S REQUEST TO DEFER FEE AWARD

VPX's request to defer the fee award to Pepsi should be denied. In seeking the deferral of a fee award, VPX argues that "the fact that the [] Award is essentially a preliminary injunction that preserves the 'status quo ante' cuts against awarding Pepsi[] any fees at this stage." Response at 3.[2] However, VPX relies on several inapposite cases in making this argument. That is because, unlike in the cases cited by VPX, the fees sought here pertain to a confirmed arbitration award, and the subject fee provision provides for a fee award in this situation (as discussed above). Although the Award is effectively a preliminary injunction, the Court's Confirmation Order is final (and has not been appealed). Moreover, any decision to defer the fee award would be

---

same under any law given the plain language of the Agreement and the Court's confirmation of the Award.

[2] In its Response, VPX also argues that any fee award should be deferred because its claims in this case (for breach of the Agreement and tortious interference) are still pending. However, this argument is now moot in light of the Court's Dismissal Order.

inconsistent with the Court's earlier determination that the Award is sufficiently final to be confirmed under the FAA. Additionally, in cases VPX relies on, where the court ruled upon requests for preliminary injunctive relief (as opposed to deciding the narrower issue of whether to confirm an arbitration award), litigation continued in court. However, this court case has concluded (with the sole exception of the instant Motion). Therefore, it would be improper to defer a fee award when this court proceeding has reached its end, even if the arbitration proceeding remains ongoing. At the very least, the circumstances of this case warrant exercising the Court's discretion to dispose of the Motion now.

### III.   PEPSI ONLY ENTITLED TO *REASONABLE* ATTORNEYS' FEES

As indicated above, the subject fee provision provides for an award of "all costs, attorneys' fees and expenses . . . ." It does not expressly limit such an award to "reasonable" costs, fees, and expenses. Nonetheless, courts are still required to ensure that requested attorneys' fees are reasonable before rendering a fee award. *See Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) ("Because a fee-shifting clause can produce perverse incentives for a litigant (and his attorneys), courts must scrutinize fee requests to ascertain whether they are reasonable. . . . [T]he rule in New York is that when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." (internal citations omitted)); *Anstalt v. ShiftPixy, Inc.*, No. 19 Civ. 6199, 2020 WL 1330216, at *2 (S.D.N.Y. Mar. 23, 2020) ("Even though the Note provides for recovery of attorneys' fees without qualification, New York law imposes a reasonability requirement."); *PSG Poker, LLC v. DeRosa-Grund*, No. 06 CIV. 1104, 2008 WL 2755835, at *4 (S.D.N.Y. July 14, 2008), *report and recommendation adopted*, 2008 WL 3852051 (S.D.N.Y.

Aug. 15, 2008) ("While the Contract states that the prevailing party may recover 'all' of its attorneys' fees, the Court must still determine whether the amount requested is reasonable.").

## IV. REASONABLENESS

When determining the reasonableness of attorneys' fees, courts begin by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The result of that calculation is known as the lodestar, s*ee id.* at 1301-02, which is "strongly presumed to be reasonable." *Martinez v. Hernando Cnty. Sheriff's Office*, 579 F. App'x 710, 715 (11th Cir. 2014) (citations omitted).

The party seeking an award of fees has the burden of documenting the hours incurred and the applicable hourly rates. *Norman*, 836 F.2d at 1303 (citing *Hensley*, 461 U.S. at 437). Fee applicants are required to exercise billing judgment and to exclude entries that are excessive, redundant, or otherwise unnecessary. *Am. Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (citing *Hensley*, 461 U.S. at 434). Entries for clerical or administrative tasks should also be excluded. *See Ortega v. Berryhill*, No. 16-24697-CIV, 2017 WL 6026701, at *2 (S.D. Fla. Dec. 5, 2017) ("Purely clerical or secretarial tasks that require no legal skill or training, such as converting pleadings to PDF, faxing and mailing, updating lists and calendars, and filing or e-filing documents, should not be billed at a paralegal rate regardless of who performs them." (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 553 (7th Cir. 1999))).

It is axiomatic that hours that are unreasonable to bill to one's client are unreasonable to bill to an adversary, "*irrespective of the skill, reputation or experience of counsel*." *Barnes*, 168 F.3d at 428 (quoting *Norman*, 836 F.2d at 1301). If fee applicants fail to exercise billing judgment, courts must do it for them. *Id.* A court "is itself an expert on the question and may consider its

own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman*, 836 F.2d at 1303 (citations omitted).

Courts reviewing fee applications "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Consequently, "[w]hen a district court finds the number of hours claimed is unreasonably high, the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir. 1994)).

### A. Reasonable Hourly Rate

Pepsi requests that this Court find $1,313 to be a reasonable hourly rate for attorney Andrew Tulumello, $857 to be a reasonable hourly rate for attorney Bradley Hubbard, and $734 to be a reasonable hourly rate for attorneys Saria Bahadue and Chantalle Schropp. Mr. Tulumello is a partner at Gibson, Dunn & Crutcher LLP ("Gibson Dunn"), a top national law firm. The other three attorneys are associates at Gibson Dunn. As discussed herein, I recommend approval of Mr. Tulumello's rate, reduction of Mr. Hubbard's rate to $750, and reduction of the rate for the other associates to $650.

As the party seeking an award of fees, Pepsi has the burden of "supplying the court with specific and detailed evidence from which the court can determine the reasonable hourly rate." *Barnes*, 168 F.3d at 427 (quoting *Norman*, 836 F.2d at 1303). "A reasonable hourly rate is 'the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'" *Id.* at 436 (quoting *Norman*, 836 F.2d

at 1299). "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *Id.* at 437 (citing *Cullens v. Georgia Dep't. of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994)). In *Barnes*, the Eleventh Circuit noted that "[i]f a fee applicant desires to recover the non-local rates of an attorney who is not from the place in which the case was filed, he must show a lack of attorneys practicing in that place who are willing and able to handle his claims." *Id.* (citations omitted). However, it did "not rule out the possibility that there might be a case where use of an attorney from a higher-rate market who had extensive prior experience with a particular factual situation could be justified because of efficiencies resulting from that prior experience." *Id.* at 438.

Under the circumstances of this case, I find that it is reasonable to award New York market rates for Pepsi's attorneys rather than limiting their rates to those that are reasonable in the South Florida market. Although Pepsi has not established a lack of attorneys in South Florida who are willing and able to handle this case (undoubtedly, there are attorneys in South Florida who would have been willing and able to do so), the dispute in this case first arose in New York where Pepsi commenced the arbitration proceeding. Significantly, as this Court previously recognized, "[t]he issue resolved in the Emergency Arbitration proceeding is the same issue that the Court is being asked to resolve here." Dismissal Order at 5. Given that reality, it would have made little sense for Pepsi to proceed with any other attorneys in this case. Pepsi's attorneys did not only have "extensive prior experience with a particular factual situation." *Barnes*, 168 F.3d at 438. They had much more. They were directly involved in obtaining the Award at issue, and they only entered this venue to defend proceedings aimed at undermining their New York Award. Moreover, for the sake of efficiency and to avoid inconsistent results, they filed their motion to confirm the Award in this case, and the fees they seek are for confirming that (New York) Award – one which

the same attorneys obtained – in the face of VPX's challenges thereto. Even if New York is not technically the relevant market, it is reasonable to award New York rates to Pepsi based upon the circumstances of this case.

Having established that Pepsi is entitled to recover fees at New York rates, I will examine the background and experience of the four attorneys for which Pepsi seeks to recover fees. Pepsi has provided authenticated copies of the attorneys' biographies [DE 66-1, Ex. C]. First, as noted above, Mr. Tulumello is a partner at Gibson Dunn. He graduated from Harvard Law School, *magna cum laude*, completed a federal circuit court clerkship following law school, and has been an attorney for over twenty-two years. Mr. Tulumello is a member of several practice groups at his firm, serves as the co-chair of one of those practice groups, is a member of the firm's executive committee, and previously served as the co-partner in charge of his firm's Washington, D.C. office and the co-chair of other practice groups at his firm. Further, Mr. Tulumello has briefed and argued appeals before the Supreme Court and has numerous other accolades. His background and experience, combined with the complexity of this matter, justify a top-market rate among attorneys with comparable years of practice. Notably, he has been representing Pepsi in different matters for nearly fifteen years.

Second, Mr. Hubbard is a senior associate who graduated with Honors from the University of Chicago Law School in 2013. During law school, he served as the Managing Editor of *The University of Chicago Law Review*. Following law school, Mr. Hubbard completed two federal appellate clerkships – in different circuits. He is admitted to practice before the Supreme Court and multiple federal circuit courts and has participated in significant litigation and appellate proceedings during his career. Mr. Hubbard's background and experience, combined with the

complexity of this matter, also justify a top-market rate among attorneys with comparable years of practice.

Third, Ms. Bahadue is an associate who graduated from Harvard Law School in 2016. During law school, she served as the Co-Editor-in-Chief of the *Journal of Law & Gender*. Following law school, Ms. Bahadue completed a federal district court clerkship and a federal circuit court clerkship. Finally, Ms. Schropp graduated from the Duke University School of Law in 2016. During law school, she served on the editorial board of the *Journal of Law and Contemporary Problems* and was a member of Moot Court and Mock Trial. Following law school, Ms. Schropp completed a federal district court clerkship and a federal circuit court clerkship. It is reasonable for both Ms. Bahadue and Ms. Schropp to have top billing rates among attorneys with similar years of experience.

Pepsi has met its burden of providing sufficient evidence for the Court to determine the reasonable hourly rates of its attorneys. Not only has Pepsi provided evidence regarding the experience and qualifications of its attorneys, it has provided evidence regarding rates charges by other attorneys with similar skills and experience in the New York market and Washington, D.C. market (and other markets). Pepsi has introduced, *inter alia*, a Wolters Kluwer publication containing hourly rate information and other information [DE 66-1, Ex. D]. The Wolters Kluwer report reflects third quartile rates of $1,305 for New York partners ($1,330 for those with twenty-one or more years of experience) and $858 for New York associates ($945 for those with seven or more years of experience and $826 for those with three to seven years of experience).

The rates charged by Pepsi's attorneys are consistent with the New York rates reflected in the Wolters Kluwer publication, which I find to be somewhat persuasive regarding New York market rates. However, I place greater weight on recent case law from the Southern District of

New York as to what is reasonable. *See, e.g.*, *Angelo, Gordon & Co., L.P. v. MTE Holdings, LLC*, No. 20 Misc. 23, 2021 WL 1353756, at *2-3 (S.D.N.Y. Apr. 12, 2021); *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 392 F. Supp. 3d 382, 407-08 (S.D.N.Y. 2019); *Vista Outdoor Inc. v. Reeves Fam. Tr.*, No. 16 CIV. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018). While Mr. Tulumello's rate is consistent with the high-end partner rates approved in those cases, the associate rates that were approved were lower. Specifically, in *Angelo, Gordon & Co.*, the court found Jones Day partner rates of $1,175 to $1,350 to be reasonable, noting that while the rates were on the "higher end," they were "comparable to rates awarded in this jurisdiction for firms in the [] New York City big firm market." 2021 WL 1353756, at *3 (citations and internal quotation marks omitted). In *Kortright Capital*, the court found $1,200 to be a reasonable partner rate. 392 F. Supp. 3d at 407. Finally, in *Vista Outdoor*, the court found Gibson Dunn partner rates of $1,165 to $1,260 to be reasonable. 2018 WL 3104631, at *6. Thus, consistent with those decisions, Mr. Tulumello's $1,313 rate is at the higher-end of what is reasonable in the New York City market for partners at large, top law firms, but it is nonetheless reasonable – and a reasonable rate that Pepsi has paid Gibson Dunn in connection with this case.

With respect to the associate rates, the same three cases cited above reduced rates of associates with comparable experience to under $700. In *Angelo, Gordon & Co.*, the court reduced the rate of a 2013 law school graduate from $875 to $650; however, it did not reduce a 2017 law school graduate's $625 rate. 2021 WL 1353756, at *3. It noted that courts in the Southern District of New York generally do not approve associate rates over $650, but it also indicated that rates of $753 are at the upper limit of associate rates in the district. *Id.* In *Kortright Capital*, the court awarded associate rates of $650, but it also noted that the plaintiff failed to provide evidence regarding the legal experience of the associates. 392 F. Supp. 3d at 408. Finally, in *Vista Outdoor*,

11

the court reduced Gibson Dunn associate rates of $510 to $925 by 25%, noting that Gibson Dunn associate rates of $569.02 to $753.42 were approved in a 2017 case. 2018 WL 3104631, at *6 (citing *MSC Mediterranean Shipping Co. Holding S.A. v. Forsyth Kownacki LLC*, No. 16 CIV. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017)).

As indicated above, based on my own knowledge regarding reasonable hourly rates and based on Pepsi's attorneys' experience and qualifications, it is reasonable for Pepsi to recover fees for the work of the Gibson Dunn attorneys at hourly rates that are on the higher-end of the big law, New York City market. Thus, consistent with the cases discussed above, I find Mr. Tulumello's hourly rate of $1,313 to be reasonable. However, in light of those same cases, I find it appropriate to reduce Mr. Hubbard's rate from $857 to $750 and to reduce the rates of Ms. Bahadue and Ms. Schropp from $734 to $650. I find these reduced associate rates to be reasonable.[3]

### B. Hours Reasonably Expended

I have carefully reviewed the time records of Pepsi's attorneys and all other relevant materials. In contesting the reasonableness of Pepsi's fees, VPX contends that the time spent by Pepsi was excessive. In so arguing, aside from asserting that the time incurred is generally excessive, VPX primarily contends that Pepsi improperly incurred most of the time on its

---

[3] VPX's primary argument advanced against the requested rates is that Pepsi's attorneys should be limited to South Florida rates, without alternatively discussing whether the requested rates are reasonable in the New York City market. Similarly, VPX's expert affidavit only focuses on this market, not the New York City market. Consequently, given my determination that high-end New York rates are warranted, neither VPX's Response nor VPX's expert affidavit are helpful in determining the reasonable hourly rates for Pepsi's attorneys. Nevertheless, I note that had I found Pepsi to be limited to South Florida rates, I would have reduced Mr. Tulumello's rate to $725, Mr. Hubbard's rate to $475, and the rates of Ms. Bahadue and Ms. Schropp to $425 (which are all at the higher-end of what is reasonable in this district) – reductions that would have been consistent with my prior reduction of New York rates to South Florida rates. *See Roche Diagnostics Corp. v. Surplus Diabetic, Inc.*, No. 19-CV-61469, 2020 WL 8082367, at *6-7 (S.D. Fla. July 6, 2020), *report and recommendation adopted*, 2020 WL 8079821 (S.D. Fla. July 21, 2020).

confirmation motion before the Award was even issued and that the collective length of Pepsi's confirmation motion and reply (26 pages with 16 pages of argument) renders 182.4 hours excessive. VPX replies that page count does not appropriately measure reasonableness and has no bearing on the complexity of the issues, that VPX also submitted more than 10 exhibits and declarations, and that Pepsi "acted with appropriate diligence and foresight" by expending time on the confirmation motion before the Award was issued because Pepsi knew that confirmation would be urgently needed (provided an award was issued to Pepsi).

I agree with VPX that the hours incurred by Pepsi are excessive, but not nearly to the degree espoused by VPX. With respect to the page length argument, it perhaps has some relevance to reasonableness, but any such relevance is minimal. After all, it is quite possible that it could take 10 hours to research and prepare a 20-page brief of a simple nature, and it is quite possible that it could take well over 100 hours to research and prepare a 20-page brief addressing extremely complex legal or factual issues. The briefing in this case is of a more complex nature, but it is also somewhat less involved than summary judgment motions that involve sorting through numerous deposition transcripts and other discovery and factual evidence. Ultimately, however, the mere number of pages Pepsi used in its briefing has little relevance on its own in this hotly contested matter (the issue might be different if the page count was substantially lower though).

As to VPX's argument that Pepsi improperly incurred a substantial amount of time on the confirmation motion and related research before the Award was even issued, I agree that this merits a small reduction. While Pepsi is correct that it appropriately completed work in advance given the high-stakes issues and the need to act with urgency should an award issue, it is unfair to pass on 100% of those fees to VPX. *See Barnes*, 168 F.3d at 428 ("Courts are not authorized to be generous with the money of others."). It is unlikely that Pepsi would have spent the same amount

13

of time if it did not begin addressing confirmation until it had an arbitration award in hand.  For instance, on December 8, 2020, Mr. Hubbard has an entry for 7.6 hours for revising the motion to confirm "in light of [the] arbitrator's award."  This illustrates that even if Pepsi could anticipate many issues prior to the issuance of the Award, it could not anticipate all of the issues.  Similarly, it is likely that Pepsi spent at least a small amount of time addressing issues before receiving the Award that it may not have otherwise had to address.  Unfortunately, some entries contain very limited descriptions regarding the tasks completed – the records do not allow the Court to ascertain every issue Pepsi spent time addressing.  Nevertheless, it does appear likely that Pepsi would have incurred the substantial majority of the hours it did incur had it waited to work on the confirmation motion.  Therefore, this issue only merits a small reduction (of approximately 10 hours).

Even with a small reduction based on the foregoing issue, however, the hours expended by Pepsi are still somewhat excessive, but not by more than an additional 25 to 30 hours (in addition to the approximately 10 hours mentioned above).  The greatest excess (from a percentage standpoint) relates to the motions to seal.[4]  At least half of the 7+ hours spent researching and preparing the motions to seal is excessive (this is accounted for in the 25-30 excessive hours reflected above).  Additionally, the billing records evidence some duplication when multiple attorneys seek to recover hours for the same conferences.  However, such duplication is minimal, amounting to no more than 5 hours.  Plaintiff also indicates in its objections to individual entries that two entries contain block billing.  However, only the second entry Plaintiff identifies (from December 12, 2020) has a block-billing issue.  While the second portion of the entry (letter to

---

[4] I disagree with VPX's contention that time spent on the motions to seal is not related to the confirmation motion.

AAA) appears to be unrelated to the confirmation motion, the issue only merits a reduction of less than 1 hour (clearly, the majority of the time was spent on the compensable portion of the entry).

For the foregoing reasons, and having considered all of the arguments raised by the parties even if not expressly discussed above, I find that approximately 40-45 hours should be deducted from the 182.4 hours Pepsi seeks to be awarded (even taking into account that Pepsi paid counsel for all 182.4 hours). Therefore, I recommend an across-the-board reduction of 23%[5] for each timekeeper. With that reduction, the hours are reasonable.

### C. Lodestar

Once the 23% reduction is applied, Mr. Tulumello's 29.7 hours are reduced to 22.87 hours, Mr. Hubbard's 68 hours are reduced to 52.36 hours, Ms. Bahadue's 74.6 hours are reduced to 57.44 hours, and Ms. Schropp's 10.1 hours are reduced to 7.77 hours. Consequently, the lodestar figure for this matter is $111,684.81. This includes $30,028.31 for Mr. Tulumello (22.87 hours * $1,313), $39,270 for Mr. Hubbard (52.36 hours * $750), $37,336 for Ms. Bahadue (57.44 hours * $650), and $5,050.50 for Ms. Schropp (7.77 hours * $650). I find the lodestar amount of $111,684.81 to be reasonable.

### CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the District Court enter an Order **GRANTING IN PART and DENYING IN PART** the Motion [DE 66] and awarding Pepsi attorneys' fees in the amount of **$111,684.81**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge. Failure to timely file objections shall bar the

---

[5] 42.5 divided by 182.4 = 23.3%.

parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 3rd day of May 2021.

*/s/ Jared Strauss*
Jared M. Strauss
United States Magistrate Judge